**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

**JOHN F. FRANCIS,**

    **Plaintiff,**

    v.                                                                        CASE NO.  25-3024-JWL

**SAM CLINE, et al.,**

    **Defendants.**

**MEMORANDUM AND ORDER**

An initial review of the complaint filed in this matter reveals multiple deficiencies that leave this case subject to dismissal in its entirety. Plaintiff and state prisoner John F. Francis is therefore required to file an amended complaint that cures the deficiencies identified in this memorandum and order.

**I.  Nature of the Matter before the Court**

Plaintiff brings this pro se civil rights action under 42 U.S.C. § 1983. He is in custody at El Dorado Correctional Facility (EDCF) in El Dorado, Kansas and he has been granted leave to proceed in forma pauperis in this matter. (*See* Doc. 8.) The events underlying this matter began while Plaintiff was incarcerated at Hutchinson Correctional Facility (HCF) in Hutchinson, Kansas, just prior to his transfer to EDCF. In his complaint, Plaintiff names as Defendants EDCF Warden Thomas Williams; former EDCF Warden Sam Cline; and Kansas Secretary of Corrections Jeff Zmuda. (Doc. 1, p. 1-2, 6.) He also names as Defendants HCF Unit Team Managers (UTM) J. Bell and Linda Wildermuth and the following individuals at EDCF: Classification Managers Maria G. Bos and Dale R. Call, Corrections Supervisors II ("CS II") Cody W. Austin and Kirbie R. Shearburn, UTMs John Mark A. Henke and Malty Martin, Unit Team Supervisor (UTS) Gregory

Abel, Classification Manager II Matthew M. Moore, Behavior Health Providers (fnu) Reed and (fnu) Bunyard, and "TSC II" Phillip A. Patterson. *Id.* at 6-9. Plaintiff sues each Defendant in his or her official and individual capacity. *Id.* at 5.

As the factual background for the complaint, Plaintiff alleges that on February 4, 2020, while he was housed at HCF, "an exchange [in the HCF chow hall] between staff and inmates resulted in five (5) correctional officers receiving medical attention." (Doc. 1, p. 2, 9.) Plaintiff was not present at the incident and he alleges that he was not involved. *Id.* at 9. Despite this, Defendant Bell wrote a report "that falsely and ambiguously" stated that Plaintiff had been involved. *Id.* The following day, Plaintiff was taken from his cell in HCF general population and moved to a segregation cell at EDCF. *Id.*

On October 9, 2023, Plaintiff was placed in a suicide/observation cell and all of his property was taken, including legal materials related to his ongoing criminal and civil appeals. *Id.* at 10. For two weeks, Plaintiff was denied basic hygiene essentials, which left him unable to wash his hands or brush his teeth, and he had no access to a tablet or phone with which to contact his family. *Id.* Plaintiff states that he was never given the opportunity to challenge his initial placement in segregation or the allegations that led to him being placed in segregation, nor has he been afforded a meaningful review of his continued placement in segregation. *Id.* at 9. He remains in a segregation cell today. *Id.* Moreover, Plaintiff has been informed that he will not be released from segregation unless he completes a behavior program. *Id.*

As Count I of the complaint, Plaintiff asserts that his constitutional right to due process was violated with respect to his placement in segregation because he (1) was not provided with an opportunity to challenge his initial placement in segregation; (2) was not provided with an opportunity to challenge the allegations that led to his placement in segregation; (3) was not

provided with a meaningful review of his placement; and (4) was denied "on several occasions" the chance to attend segregation review meetings. *Id.* at 3, 9. As Count II, Plaintiff asserts that his constitutional right to equal protection was violated because he remains in segregation with no hope of returning to general population unless he completes a behavior program despite having no involvement in the incident at HCF. *Id.* Plaintiff further asserts that several other inmates who were directly involved or placed in segregation as a result of the incident were released from segregation after a matter of months, most without completing a behavior program. *Id.* at 9-10. Plaintiff states that he is the only inmate remaining in segregation as a result of the HCF incident. *Id.* at 10.

As Count III, Plaintiff asserts that he was subjected to cruel and unusual punishment in violation of the Eighth Amendment for the two weeks in October 2023 when he was placed in the suicide/observation cell. *Id.* He contends that his placement and the removal of his property was retaliation from Defendant Abel. *Id.* As relief, Plaintiff seeks an order for his immediate release from segregation; $250.00 for every day he has been in segregation; $15,000.00 from each Defendant for emotional and mental damages; and $250,000.00 in punitive damages. *Id.* at 5.

## II. Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are frivolous, fail to state a claim on which relief may be granted, or seek relief from a defendant immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was

committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988) (citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992). A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In addition, the court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006). But "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). The complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Id.* at 555, 570.

As the Tenth Circuit Court of Appeals has explained, "to state a claim in federal court, a complaint must explain what each defendant did to [the pro se plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). The Court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted).

The Tenth Circuit has pointed out that the Supreme Court's decisions in *Twombly* and *Erickson* gave rise to a new standard of review for § 1915(e)(2)(B)(ii) dismissals. *See Kay v. Bemis*,

500 F.3d 1214, 1218 (10th Cir. 2007) (citations omitted); *see also Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). As a result, courts "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Kay*, 500 F.3d at 1218 (citation omitted). Under this new standard, "a plaintiff must 'nudge his claims across the line from conceivable to plausible.'" *Smith*, 561 F.3d at 1098 (citation omitted). "Plausible" in this context does not mean "likely to be true," but rather refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not "nudged [his] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570).

## III. DISCUSSION

### A. Relief Requested

As noted above, Plaintiff sues each Defendant in his or her individual and official capacities and Plaintiff seeks monetary relief and injunctive relief in the form of an order that he be released from segregation. "Section 1983 plaintiffs may sue individual-capacity defendants only for money damages and official-capacity defendants only for injunctive relief." *Brown v. Montoya*, 662 F.3 1152, 1161 n.5 (10th Cir. 2011) (citing *Hafer v. Melo*, 502 U.S. 21, 27, 30 (1991)). This is because "[t]he Eleventh Amendment precludes anyone from . . . asserting a damage claim against state officers in their official capacities." *See Colby v. Herrick*, 849 F.3d 1273, 1276 (10th Cir. 2017). Thus, Plaintiff's request for money damages from Defendants in their official capacities and his request for injunctive relief against Defendants in their individual capacities are subject to dismissal.

Plaintiff also seeks money "for emotional and mental damages." (Doc. 1, p. 5.) The Prison Litigation Reform Act (PLRA) provides in part that "[n]o Federal civil action may be brought by

5

a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act." 42 U.S.C. § 1997e(e). This provision of the PLRA "limits the remedies available, regardless of the rights asserted, if the only injuries are mental or emotional." *Searles v. Van Bebber*, 251 F.3d 869, 876 (10th Cir. 2001). It applies regardless of the nature of the underlying substantive violation asserted. *Id.* Simply put, without "a prior showing of physical injury or the commission of a sexual act," a prisoner plaintiff may not obtain compensatory damages for mental or emotional injury. *Id.* at 878. Nominal and punitive damages, however, are not barred. *Id.* at 879.

In this context, "sexual act" requires genital contact or penetration. *See* 42 U.S.C. § 1997e(e); 18 U.S.C. § 2246(2). Plaintiff has not alleged the commission of a sexual act. The PLRA does not define "physical injury," but Plaintiff has not alleged that he has suffered a physical injury as a result of the constitutional violations alleged in his complaint. Thus, on the current complaint, Plaintiff's request for compensatory damages for emotional and mental harm is subject to dismissal.

Although punitive damages are available in a § 1983 lawsuit and do not require the type of injury that must be shown for mental or emotional damages, punitive damages "are available only for conduct which is 'shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'" *Searles v. Van Bebber*, 251 F.3d 869, 879 (10th Cir. 2001) (quoting *Smith v. Wade*, 461 U.S. 30, 56 (1983)). Plaintiff has not alleged specific facts that show any of the conduct underlying his claims was motivated by evil motive or intent or that show any Defendant had a reckless or callous indifference to Plaintiff's federally protected rights. Thus, Plaintiff's request for punitive damages is subject to dismissal.

### B. Personal Participation

An essential element of a civil rights claim under § 1983 against an individual is that person's direct personal participation in the acts or inactions upon which the complaint is based. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *Trujillo v. Williams*, 465 F.3d 1210, 1227 (10th Cir. 2006). "[V]icarious liability is inapplicable to . . . § 1983 suits, [so] a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). "[T]he defendant's role must be more than one of abstract authority over individuals who actually committed a constitutional violation." *Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008).

The factual allegations in the complaint that attribute action or inaction to specific Defendants are that Defendant Bell wrote a false report stating that Plaintiff was involved in the incident at HCF, Defendant Patterson "ignored" Plaintiff's attempts to contest his placement in segregation, Defendant Bos "[d]enied" further attempts, Defendant Cline "[r]ubber stamped" the denials, and Defendant Zmuda gave his "blessing" to the denials. Defendant Abel caused Plaintiff to be placed in the suicide/observation cell and caused all of Plaintiff's property to be taken "as a form of retaliation." Defendant Abel's actions "were approved by" Defendant Henke, who is Defendant Abel's direct supervisor and who "could have immediately intervened to prevent the violation of [Plaintiff's] constitutionally protected right," and Defendants Williams and Zmuda "rubber stamp approved" the acts. (Doc. 1, p. 6, 9-10.)

Plaintiff makes no specific allegations in the complaint about Defendants Austin, Shearburn, Martin, Moore, Call, Reed, Bunyard, or Wildermuth. The Court recognizes that these Defendants took part in some of the decisions reflected in the documents attached to the petition, but the Court "will not . . . construct a legal theory on a plaintiff's behalf." *See Whitney*, 113 F.3d

at 1173-74. A viable § 1983 claim must establish that each defendant caused a violation of Plaintiff's constitutional rights. *See Walker v. Johiuddin*, 947 F.3d 1244, 1249 (10th Cir. 2020) (quoting *Pahls v. Thomas*, 718 F.3d 1210, 1228 (10th Cir. 2013)). As a result, Plaintiff must not only name each defendant in the caption of the complaint, he must do so again in the body of the complaint and include in the body a description of the acts taken by each defendant that violated Plaintiff's federal constitutional rights.

"To state a claim, a complaint must 'make clear exactly *who* is alleged to have done *what* to *whom*.'" *Stone v. Albert*, 338 Fed. Appx. 757, 759 (10th Cir. 2009)(quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008)). "[I]t is incumbent upon a plaintiff to 'identify *specific* actions taken by *particular* defendants' in order to make out a viable § 1983 . . . claim." *Pahls v. Thomas*, 718 F.3d 1210, 1226 (10th Cir. 2013). Conclusory allegations of involvement are not sufficient. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

Plaintiff's complaint and exhibits frequently use the passive voice to describe events rather than attributing those events to a particular individual. For example, in the supporting facts for Count II, Plaintiff states that he "is being told that under no circumstances will he be released unless he completes a behavior program," a requirement that Plaintiff describes as "a blatant violation of [his] constitutional right to equal protection." (Doc. 1, p. 9.) But Plaintiff does not identify who has imposed that requirement upon him. This makes it impossible for the named Defendants or the Court to ascertain who Plaintiff believes violated his constitutional equal protection rights. Because the complaint does not sufficiently allege the direct personal participation of Defendants Austin, Shearburn, Martin, Moore, Call, Reed, Bunyard, or Wildermuth, those Defendants are subject to dismissal from this matter.

This action also is subject to dismissal as against Defendants Patterson, Bos, Cline,

Williams, and Zmuda because the complaint does not sufficiently allege their personal participation. "[V]icarious liability is inapplicable to . . . § 1983 suits, [so] a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). "[T]he defendant's role must be more than one of abstract authority over individuals who actually committed a constitutional violation." *Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008). Moreover, an allegation that an official denied or failed to respond to a grievance is not enough to show personal participation as required for a plausible claim under § 1983. *See Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009).

For these reasons, Defendants Austin, Shearburn, Martin, Moore, Call, Reed, Bunyard, Wildermuth, Patterson, Bos, Cline, Williams, and Zmuda are subject to dismissal from this matter. The Court will, however, grant Plaintiff the opportunity to file a complete and proper amended complaint, on the required form, that sufficiently alleges the direct personal participation of each named Defendant in a constitutional violation. If Plaintiff chooses to file an amended complaint, he must also correct the additional deficiencies in the current complaint identified below.

### B. Failure to State a Claim

#### i. Count I

In Count I, Plaintiff asserts the violation of his constitutional due process rights because he was not given an opportunity to challenge his placement in segregation or the allegations that led to that placement, he has never received a meaningful review that could lead to his release from segregation, and he has been denied the opportunity to attend segregation review. (Doc. 1, p. 9.)

"Procedural due process imposes constraints on governmental decisions that deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the

Fifth or Fourteenth Amendment." *Matthews v. Eldridge*, 424 U.S. 319, 332 (1976). "To assess whether an individual was denied procedural due process, courts must engage in a two-step inquiry: (1) did the individual possess a protected interest such that the due process protections were applicable; and, if so, then (2) was the individual afforded an appropriate level of process." *Merrifield v. Bd. of Cty. Comm'rs*, 654 F.3d 1073, 1078 (10th Cir. 2011) (citation omitted).

As the United States Supreme Court has explained, "[t]he types of interests that constitute 'liberty' and 'property' for Fourteenth Amendment purposes are not unlimited; the interest must rise to more than 'an abstract need or desire,' and must be based on more than 'a unilateral hope.'" *Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454, 460 (1989). The Supreme Court also has held that an inmate does not possess a liberty interest in assignment to a particular place of confinement. *See Wilkinson v. Austin*, 545 U.S. 209, 221-22 (2005); *Meachum v. Fano*, 427 U.S. 215, 224-25 (1976). Rather, the classification of prisoners is among the "wide spectrum of discretionary actions that traditionally have been the business of prison administrators rather than of the federal courts." *Meachum*, 427 U.S. at 225.

Similarly, the Tenth Circuit has explained that "[t]he Due Process Clause guarantees due process only when a person is to be deprived of life, liberty, or property. Changing an inmate's prison classification ordinarily does not deprive him of liberty, because he is not entitled to a particular degree of liberty in prison." *Templemean v. Gunter*, 16 F.3d 367, 369 (10th Cir. 1994) (citing *Meachum v. Fano*, 427 U.S. 215, 225 (1976)). Being housed in administrative segregation implicates constitutional due process only if the confinement is "the type of atypical, significant deprivation in which a state might conceivably create a liberty interest." *See Sandin v. Conner*, 515 U.S. 472, 486 (1995). The complaint in this matter does not allege facts that demonstrate this sort of atypical, significant deprivation with respect to Plaintiff's experience in segregation at

EDCF. Simply being placed in segregation without the chance to challenge the placement or the basis thereof is not, by itself, a federal constitutional violation. Moreover, Plaintiff has not identified the individual who actually ordered his placement in segregation, described that person's unconstitutional acts, or sufficiently described such extreme conditions or restrictions to show that his placement in segregation led to atypical and significant deprivations warranting due process protections.

Thus, Count I is subject to dismissal for failure to state a claim on which relief can be granted. Plaintiff will be granted time in which to file an amended complaint that cures the deficiencies in Count I.

### ii. Count II

In Count II, Plaintiff alleges a violation of his constitutional right to equal protection, noting that all other inmates placed in segregation as a result of the HCF incident have been returned to general population, some without completing a behavioral program, while he remains in segregation and must complete a behavioral program to be released back to general population. (Doc. 1, p. 9-10.)

The Equal Protection Clause of the Fourteenth Amendment "'commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike.'" *See Requena v. Roberts*, 893 F.3d 1195, 1210 (10th Cir. 2018) (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). "An equal protection claim may challenge legislation or the conduct of an individual." *Ashaheed v. Currington*, 7 F.4th 1236, 1250 (10th Cir. 2021) (citation omitted). The claim "may be asserted with respect to a group or a 'class of one.'" *Id.* (citation omitted). "The former is more common and concerns a 'governmental classification[ ] that affect[s] some groups of citizens

differently than others.'" *Id.* (citations omitted). Plaintiff does not allege that he was treated differently on the basis of class membership. To proceed upon an equal protection claim as a "class-of-one plaintiff," there must be allegations that others similarly situated in every material respect were intentionally treated differently and that the government's action was irrational and abusive. *Haik v. Salt Lake City Corp.*, 567 F. App'x 621, 631–32 (10th Cir. 2014); *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1216 (10th Cir. 2011).

Although Plaintiff asserts that other inmates who were housed in segregation based on their involvement in the HCF incident have been released back to general population, he has failed to allege that the other inmates were similarly situated in every material respect. *See Barney v. Pulsipher*, 143 F.3d 1299, 1312 (10th Cir. 1998) ("In order to assert a viable equal protection claim, plaintiffs must first make a threshold showing that they were treated differently from others who were similarly situated to them.") (citation omitted). For example, Plaintiff does not contend that the other inmates' involvement in the incident was the same as his alleged involvement. In fact, he states that some of the other inmates to whom he compares himself were "directly involved" in the HCF incident. (Doc. 1, p. 9.) Accordingly, they are not similarly situated to Plaintiff, who maintains that he was not involved at all.

Plaintiff has failed in the complaint to sufficiently allege that other inmates similarly situated in every material respect were intentionally treated differently than he has been. Plaintiff also does not identify a specific individual Defendant or Defendants responsible for the alleged equal protection violation. Thus, Count II is subject to dismissal for failure to state a claim. If Plaintiff chooses to pursue this claim in an amended complaint, he must allege sufficient facts that, if taken as true, could state a plausible claim for relief. He is reminded that "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be

based." *See Hall*, 935 F.2d at 1110.

### iii. Count III

In Count III, Plaintiff asserts the violation of the Eighth Amendment's prohibition of cruel and unusual punishment based on his October 2023 placement in a suicide/observation cell. (Doc. 1, p. 10.) Plaintiff alleges that his placement in this cell and his corresponding loss of property was "as form of retaliation" by Defendant Abel that left him unable to wash his hands, brush his teeth, or contact his family for 2 weeks. *Id.*

First, to the extent that Plaintiff intends to assert a claim of unconstitutional retaliation, he has failed to state a plausible claim for relief. An "inmate claiming retaliation must allege *specific facts* showing retaliation because of the exercise of the prisoner's constitutional rights." *Fogle v. Pierson*, 435 F.3d 1252, 1264 (10th Cir. 2006) (quotations and citations omitted); *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998). Thus, for this type of claim, "it is imperative that plaintiff's pleading be factual and not conclusory. Mere allegations of constitutional retaliation will not suffice." *Frazier v. Dubois*, 922 F.2d 560, 562 n.1 (10th Cir. 1990) ("plaintiffs must allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights.").

Rather, the plaintiff must show that the challenged actions would not have occurred "but for" a retaliatory motive. *Baughman v. Saffle*, 24 F. App'x 845, 848 (10th Cir. 2001) (citations omitted); *see also Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999) ("[T]he inmate must allege more than his personal belief that he is the victim of retaliation."). Plaintiff's allegations of retaliation in the current complaint are generally conclusory and lacking facts to demonstrate any improper retaliatory motive. Thus, Plaintiff has not stated a plausible claim for retaliation and any such claim Plaintiff intended to make is subject to dismissal.

Second, to the extent that Plaintiff intends through Count III to seek compensation for the

loss of his property, he has failed to state a plausible claim for relief because it is unclear what constitutional provision he believes was violated by the property loss. Moreover, Plaintiff has not stated whether the property of which he was deprived was ever returned and Plaintiff makes only the general allegation that "all of [his] property [was] taken." (Doc. 1, p. 10.) If Plaintiff wishes to pursue this claim, he must plead additional facts in his amended complaint that clarify the constitutional provision he believes was violated by the taking of his property and clearly identify the Defendant or Defendants who took his property.

It is clear, however, that Plaintiff in Count III intends to bring an Eighth Amendment claim based on his being housed for 2 weeks in a cell that left him unable to wash his hands, brush his teeth, or contact his family. The Eighth Amendment requires prison and jail officials to provide humane conditions of confinement guided by "contemporary standards of decency." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). The Constitution "'does not mandate comfortable prisons,' and only those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). Prison conditions may be "restrictive and even harsh," *see Rhodes v. Chapman*, 452 U.S. 337, 349 (1981), but "[u]nder the Eighth Amendment, [prison] officials must provide humane conditions of confinement by ensuring inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and by taking reasonable measures to guarantee the inmates' safety." *McBride v. Deer*, 240 F.3d 1287, 1291 (10th Cir. 2001).

> "An inmate raising an Eighth Amendment conditions-of-confinement claim must prove both an objective and subjective component associated with the deficiency. The objective component requires conditions sufficiently serious so as to (1) deprive an inmate 'of the minimal civilized measure of life's necessities' or (2) subject an inmate to 'a substantial risk of serious harm.' 'The subjective component requires that a defendant prison official have a culpable state of mind, that he or she acts or fails to act with deliberate indifference to inmate health and safety.' To prove deliberate indifference, a prisoner must adduce sufficient facts to

show the defendant knew of and disregarded 'an excessive risk to inmate health or safety.' Under this standard, 'the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exist, and he [or she] must also draw the inference.'"

*Brooks v. Colorado Dept. of Corrections*, 12 F.4th 1160, 1173 (10th Cir. 2021) (citations omitted).

The sufficiency of a conditions-of-confinement claim depends upon "the particular facts of each situation[, so] the 'circumstances, nature, and duration of the challenged conditions must be carefully considered.'" *Despain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2011) (citation omitted). "While no single factor controls . . . the length of exposure to the conditions is often of prime importance." *Id.* As the severity of the condition increases, the length of exposure required to make out a constitutional violation decreases. *Id.* In other words, "minor deprivations suffered for short periods would not rise to an Eighth Amendment violation, while 'substantial deprivations . . . 'may meet the standard despite a shorter duration." *Id.* (citations omitted).

When Plaintiff's allegations are taken as true, he has made a sufficient showing to state a plausible claim for relief with respect to the objective component of an Eighth Amendment conditions-of-confinement claim. With respect to the subjective component, however, Plaintiff has not met his burden. He has not identified any named Defendant as knowing that he was in a cell that left him unable to wash his hands and brush his teeth, nor has he alleged facts that show that Defendant drew the inference that this condition posed an excessive risk to Plaintiff's health or safety but disregarded the risk. If Plaintiff chooses to pursue this claim in an amended complaint, he must allege sufficient facts that, if taken as true, show both components of the Eighth Amendment test.

**IV. Amended Complaint Required**

To avoid dismissal of this action, Plaintiff is required to file a complete and proper amended complaint upon court-approved forms that cures all the deficiencies discussed herein. To add

15

claims, significant factual allegations, or change defendants, a plaintiff must submit a complete amended complaint. *See* Fed. R. Civ. P. 15. An amended complaint is not simply a supplement to the original complaint; instead the amended complaint completely replaces the original complaint. To be clear, any claims or factual allegations not included in the amended complaint are no longer before the Court. Plaintiff may not simply refer in the amended complaint to the original complaint or attempt to incorporate the original complaint by reference. The amended complaint must name all Defendants and contain all allegations and claims that Plaintiff intends to pursue in the action, including those to be retained from the original complaint.

Plaintiff must write the number of this case (25-3024-JWL) at the top of the first page of the amended complaint and must name every defendant in the caption of the amended complaint. *See* Fed. R. Civ. P. 10(a). Plaintiff must also refer to each defendant again in the body of the amended complaint, where he must allege facts describing the unconstitutional acts taken by each defendant including dates, locations, and circumstances. He must allege sufficient specific facts to show a plausible claim that each defendant personally participated in a constitutional violation. If Plaintiff does not file an amended complaint on or before June 10, 2025 that cures the deficiencies discussed herein, this action will be dismissed without prejudice for failure to state a plausible claim for relief.

**V. Motion to Appoint Counsel**

Plaintiff also has filed a motion to appoint counsel. (Doc. 9.) He points out that he is currently in custody and is indigent, so cannot retain counsel independently. *Id.* at 1. Plaintiff also notes that this matter was previously dismissed based on Plaintiff's failure to comply with a court order that he had not received, seemingly due to delays in EDCF staff processing mail sent to Plaintiff and documents Plaintiff gives staff for electronic filing. *Id.*; (*see also* Doc. 7). Plaintiff

further explains that he is not "law literate," is unfamiliar with federal rules and procedures, and needs counsel so that he can obtain certain information and experts to help further his cause. *Id.* at 1-2.

There is no constitutional right to appointment of counsel in a civil case such as this one. *See Carper v. Deland*, 54 F.3d 613, 616 (10th Cir. 1995). The decision whether to appoint counsel in a civil matter lies in the discretion of the district court. *Williams v. Meese*, 926 F.2d 994, 996 (10th Cir. 1991). The burden is on the applicant to convince the court that there is sufficient merit to his claim to warrant appointment of counsel. *Steffey v. Orman*, 461 F.3d 1218, 1223 (10th Cir. 2006) (citing *Hill v. SmithKline Beecham Corp.*, 393 F.3d 1111, 1115 (10th Cir. 2004)). It is not enough "that having counsel appointed would have assisted [the prisoner] in presenting his strongest possible case, [as] the same could be said in any case." *Steffey*, 461 F.3d at 1223 (citing *Rucks v. Boergermann*, 57 F.3d 978, 979 (10th Cir. 1995)).

In deciding whether to appoint counsel, the Court has considered "the merits of the prisoner's claims, the nature and complexity of the factual and legal issues, and the prisoner's ability to investigate the facts and present his claims." *See Rucks*, 57 F.3d at 979; *Hill*, 393 F.3d at 1115. This case is in the screening phase of the proceedings, in which the Court determines whether Plaintiff has asserted a plausible claim against a named Defendant. As explained above, the complaint in this matter fails to do so, so it is not yet clear whether this matter will proceed, much less whether Plaintiff will assert meritorious claims, whether those claims will be complex, and whether Plaintiff will need assistance in investigating the facts and presenting his claims. Thus, the Court is not convinced that appointment of counsel is warranted at this time. It will deny the motion without prejudice to refiling if the material circumstances change.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff's motion to appoint counsel (Doc. 9) is **denied without prejudice** to refiling if the material circumstances change.

**IT IS FURTHER ORDERED** that Plaintiff is granted until and including **June 10, 2025,** in which to file a complete and proper amended complaint that cures the deficiencies discussed herein. The Clerk is directed to send § 1983 forms and instructions to Plaintiff. The failure to timely file an amended complaint that cures the deficiencies may result in this matter being dismissed without further prior notice to Plaintiff.

**IT IS SO ORDERED**.

**Dated May 9, 2025, in Kansas City, Kansas.**

>S/ John W. Lungstrum
>JOHN W. LUNGSTRUM
>UNITED STATES DISTRICT JUDGE