# U.S. District Court

## District Court of Kansas (Topeka)

MR. John F. Francis,

      Plaintiff,

    V.

Warden Williams, et al,

      Defendants,

Case No. #: 5:25-cv-03024-JWL

## Motion to Amend Initial 1983 complaint

Comes now, Plaintiff John F. Francis, Prose, and moves this honorable court to allow Plaintiff leave to amend his initial complaint. In support of this motion, Plaintiff states the following:

On June 13th 2025 Plaintiff received an order from the Honorable John W. Lungstrum directing him to amend his initial pleading to cure what he considered to be fatal deficiencies or face dismissal of the matter. However, the judge's order was issued on May 9th 2025 and gave Plaintiff until June 10th 2025 to comply.

Assuming the matter to already have been dismissed due to receiving it past the date in which to comply, Plaintiff immediately filed a motion to reconsider.

On June 25th 2025 the court granted plaintiff's Motion to Reconsider and gave him until July 31st 2025 to comply with the May 9th 2025 order to Amend. In compliance with that order this pleading follows. (Attached Please see KDOC Legal, official, Privileged Mail delivery form).

Plaintiff prays that this honorable court exercise patience as Plaintiff attempts to make an argument on his behalf to the best of his ability. It can not be understated that Plaintiff has absolutely no

experience in the complexities of federal law. Plaintiff is in no way attempting to be facetious, but after trying to digest all of the legal jargon in the honorable judge Lungstrum's May 9th order he became so perplexed that it literally led to a migraine. Needless to say, Plaintiff will put forth his best effort.

A. Relief Requested

Plaintiff has been held in seg for well over five (5) years. And this protracted period without any penological justification whatsoever in and of itself has resulted in unnecessary and wanton infliction of pain. At this point Plaintiff's stay in seg is limitless.

Plaintiff has made an earnest effort to comply with all the demands placed on him to be released from seg. And due to the prolonged stay with absolutely no end in sight Plaintiff has begun to suffer both mentally as well as physically.

Plaintiff was repeatedly told that if he did not except a cellmate he would once again have all of his property taken and would not be eligible for release from seg. In an effort to appease the administration Plaintiff has sacrificed his mental and physical wellbeing by accepting a cellmate in order to get out of seg. It has taken an unhealthy toll. Prior to accepting his cellmate a inmate had stabbed his cellmate to death and remained in the cell for several days with the decedent's body. It has affected Plaintiff so much so that he's only sleeping 2 or 3 hours a night. He is roused any and everytime his cellmate moves about and had begun, for the first time ever, to have home made weapons accessible.

After consulting with Mental Health Plaintiff was advised that this high stress situation my be triggered by his PTSD. The high stress situation has also resulted in Plaintiff having issues with his blood pressure now requiring medication.

This is also in conjuction with Plaintiff being forced to live in a cell

2.

where he had to use the toilet and not be able to wash his hands with soap afterwards or prior to eating. Nor could he brush his teeth or wash his face due to being deprived of all his property, hygiene included.

The federal courts have made clear that prison officials are deliberately indifferent pursuant to the Eighth Amendment if the official knows that an incarcerated person faces "a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Those officials would be hard-pressed to make such an argument, given that previous court cases recognized that "prolonged segregation poses a substantial risk of serious psychological and physical harm."

Plaintiff has spent well over the past five (5) years being totally unable to touch or hug his aging family; attend outside recreation because for nearly the last year administration claim that they were short of staff; further his education or maintain employment to help ease the financial burden on his family. Plaintiff has been subject to mental turbulence, blood pressure issues and skin issues that resulted from those two (2) weeks without hygiene.

These oppressive and reckless acts were clearly done with callous indifference to Plaintiff's federally protected rights.

B. Personal Participation

The federal courts have long recognized that Government-officials actions or inactions as they relate to violations of constitutionally protected rights leaves them civilly liable for those actions or inaction. Defendant Cody Austin is the segregation lieutenant and is the supervising officer over inmates in seg. He's also on the seg review board. The seg review board is directly responsible for inmates retention or release from seg. Despite being aware of the fact that Plaintiff had absolutely no involvement in what placed him in seg defendant Austin has repeatedly voted for Plaintiff's retention. Defendant Austin had told Plaintiff on numerous occasions that he would have to complete the program in order to be released from seg.

3.

But, even before attending the program would first have to accept a cell mate. After accepting a cell mate the goal post was moved and Plaintiff is now being told that he has to overcome additional hurdles. Defendant Austin has approved the release of every other inmate that was placed in seg for the very same incident as Plaintiff. Some without ever attending the program.

Kirbie Shearburn is a unit team manager / deputy warden and a member of the seg review board. Defendant Shearburn has never personally attended any seg reviews that Plaintiff has attended but she is however, one of the driving forces behind Plaintiff's continued confinement in seg. She has frequently passed on word through her subordinates that if Plaintiff doesn't overcome some hurdle or another he will not be released from seg.

Defendant Martin represent Behavioral Health and is a member of the seg review board. As a mental health provider Defendant Martin is aware of the psychological and physical harm that prolonged segregation take on inmates and does absolutely nothing in the form of advocating for Plaintiff's release. Infact, he does little more than pass by Plaintiff's cell without word.

Defendant Matthew Moore was the one time unit team manager / deputy warden and was a member of the PMC board. The PMC board made direct recommendations to the warden and secretary of corrections. Defendant Moore remained constant in being against Plaintiff's release.

Defendant Dale call was a member of the PMC board. Plaintiff has absolutely no idea who Defendant call is. However, Defendant call remained constant in being against Plaintiff's release from seg.

Defendant Reed represent Behavioral Health and was a member of the seg review board. As with BHP Martin, Defendant Reed was aware of the psychological and physical harm that prolonged segregation take on inmates and done absolutely nothing in the form of advocating for Plaintiff's release.

Defendant Bunyard was a member of the seg review board. And just as

4.

Defendant's Martin and Reed, represented Behavioral Health and was aware of the psychological and physical harm that prolonged segregation take on inmates and done absolutely nothing in the form of advocating for Plaintiff's release.

Defendant Linda Wildermuth was a unit team manager at Lansing correctional facility and a member of it's Seg review board. Defendant Wildermuth along with the other officials who were members of the seg review board, that Plaintiff wish to add to this civil complaint once he learns of their names and titles, heard first hand from inmate Roland K. Hill that Plaintiff had absolutely no involvement in the incident which placed him in Seg. Inmate Hill was one of the inmates that were directly involved in the incident that led to roughly 20-30 inmates being placed in Seg. Defendant Wildermuth, along with the other officials on the LCF Seg review board, had first hand Knowledge of Plaintiff's lack of participation in the incident that placed him in Seg but still continued to deny his release.

Defendant Phillip Patterson was the unit team manager and one time seg review board member. Defendant Patterson, while on the seg review board, made his position on Plaintiff's release from seg clear, he was vehemently against it. Defendant Patterson also received the initial grievance protesting Plaintiff's placement in seg. Instead of investigating Plaintiff's claims Defendant Patterson brushed them off resigned to allow Plaintiff to indefinitely languish in seg.

Defendant Maria Bos is a unit team supervisor/Deputy warden and a member of the PMC board. Defendant Bos signed off on a Program Classification Review document acknowledging that Plaintiff was not validated as a Security Threat Group (STG) member. Despite this, Defendant Bos never once objected to the grounds in which Plaintiff was placed in Seg nor did she ever petition for his release.

Defendant Sam Cline was the warden at EDCF. As the warden all grievances must be signed off by he or his designee. And as the warden of a facility he has the authority to release an inmate from Seg despite what either the Seg review board or PMC board recommended. And despite the indefinite Seg placement inflicted on Plaintiff Defendant Cline did absolutely nothing to facilitate his release.

Defendant Tommy Williams is the warden at EDCF. Defendant Williams made was aware ~~that Plaintiff~~ ~~xxxxxxxxxxxxx~~ is being unjustly held in seg indefinitely and has done absolutely nothing to facilitate his release. Also, Defendant Williams was made aware of the constitutional violation inflicted on Plaintiff by Defendant Abel in real time but did absolutely nothing to rectify the situation.

Defendant Jeff Zmuda is the secretary of corrections for KDOC. As the SOC Defendant Zmuda has an obligation to ~~xxx~~ not only oversee the safety and security at each facility but to also ensure that every inmate in those facilities are treated fairly and that their rights are protected. Defendant Zmuda has a duty to thoroughly investigate any possible violation of those rights. Thus the purpose of the grievance procedure. Defendant Zmuda knew or should have known of the constitutional violations occurring to Plaintiff.

Federal courts uniformly agree that periodic reviews of Ad seg inmates satisfies procedural due process only when they are meaningful. Reviews are meaningful only when they involve real evaluations of the administrative justification for confinement, they consider all of the relevant evidence that bears on whether that administrative justification remains valid, and they ensure that Ad seg is used as neither a form of punishment nor a pretext for indefinite confinement.
Reviewing officials must first, actually evaluate whether the inmates continued Ad seg confinement is justified. Second, reviewing officials must evaluate whether the justification for Ad seg exist at the time of review or will exist in the future, and consider new relevant evidence as it becomes available. It is inherent in it's use of the term "Periodic" that ongoing Ad seg reviews may not be frozen in time, forever rehashing information addressed at the inmates initial Ad seg determination.
Third and finally, the reviewing officials must maintain institutional safety and security as their guiding principles throughout an inmates Ad seg term. SHU confinement that began for proper Ad seg purposes may not morph into confinement that persist for improper purposes.
Upon Plaintiff's arrival from HCF Plaintiff, while still in A&D, ask an EAI officer why he was being placed in seg, after just being snatched from population and doing nothing wrong? The EAI officer's response "Because of what in HCF chow hall... And from what I understand you're going to be there for at least a couple of years."
Plaintiff's indefinite confinement in seg was "Pre-ordained" before he

ever left his cell in HCF general population. Before being placed in seg Plaintiff had been four (4) months disciplinary reports (DR's) free. And since being placed in Seg Plaintiff has been four (4) months, over three (3) years and over twelve (12) months DR free. Plaintiff has no history of violence and has not committed any acts of violence since being in Seg. Despite all of this, as well as the fact that Plaintiff had absolutely no involvement in the incident which landed him seg, both the Seg review and PMC boards cite "placement facts" as their reasons to keep Plaintiff confined indefinitely.

The federal courts have also found that officials participation as members of these review boards, ie; Defendants Austin, Shearburn, Martin, Moore, call, Reed, Bunyard, wildermuth, Patterson and Bos, gives them sufficient personal involvement in the alleged due process violation to expose them to liability.

This personal involvement does not hinge on who has the ultimat authority, ie; Defendants cline, williams and Zmuda, for constitutionally offensive decisions. Rather, the proper focus is the defendants direct participation in, and connections to, the constitutional deprivation. This language from previous court rulings make it clear that through their participation, regardless how minimal, causes them to be liable.

The federal courts have long held Superintendants, Secretary of corrections and wardens liable for rubber stamping constitutional acts committed by their subordinates. Qualified immunity does not exist for such defendants when there is a fair warning that their conduct violates constitutional guarantees. This includes the failure to act when a known violation is taking place.

Failure to state a claim
  1. Count I

without committing any infractions or being apart of any wrong doing whatsoever, infact, being four (4) months DR free, Plaintiff was snatched out of general population and placed in segregation for an incident he had absolutely no involvement in.

Unit team manager J. Bell was the author of the seg report that led to Plaintiffs' indefinite confinement in segregation. There was no hearing held and Plaintiff never had the oppratunity to confront the alleged evidence against him. Due process has been non-exsistent as it relates to Plaintiffs' indefinite seg confinement.

Plaintiffs' situation itself is atypical. It's not every day that a prison

7.

administration, totally without provocation, just snatches an inmate out of general population in one facility, and having done absolutely nothing wrong or broken any rules, indefinitely throws him in segregation in another facility, for an incident that they're infact he had absolutely no involvement in. that's liken to snatching a totally innocent man from his home in the free world and indefinitely throwing him in prison for a crime the government knows he had absolutely no involvement in, all under the guise of safety and security.

If this honorable court is willing to turn a blind eye to KDOC indefinitely ~~xxxxxxxxxxxx~~ throwing an inmate in seg in total violation of his constitutionally protected rights without even a semblance of a meaningful review, then Plaintiff in all honesty has far more than the possibility of his civil complaint being dismissed to worry about.

ii count II

The incident that occurred in the HCF chow hall involved maybe 10-15 inmates. Plaintiff was not present so he would be unable to give an actual account without the necessay documentation or proper investigation. From what Plaintiff gathered through random conversations with other inmates who witnessed the incident, as well as two or three who were directly involved, it was a completely random incident that occurred over inmates not been given sufficient time to eat their meals.

outside of those inmates who were directly involved, there were an additional 10-15 inmates, like Plaintiff, who had absolutely no involvement in the incident making them similarly situated in every material respect. again, without the necessary documentation or proper investigation Plaintiff would be unable to give an accurate account. However, Plaintiff is aware of the fact that some inmates who were directly involved were placed in seg in HCF and were released a few months later to HCF general population. of those who were transferred to EDCF with Plaintiff there was at least one, who like Plaintiff had absolutely nothing to do with the incident, was returned to HCF and released back into general population all just a few short months later.

There were other inmates who remained in seg a little longer. Some however, never attended the program. And all have been released from Seg leaving Plaintiff the only one (1) remaining in seg from that incident, over five (5) years later. with all due respect, this honorable court has demanded that Plaintiff produce

8.

accurate names, dates and times to avoid dismissal of his complaint. But Plaintiff, the court is well aware, is barely receiving court orders and memorandums do to EDCF interference. Plaintiff doesn't know the government names of all the inmates involved or the disposition of their situation. And without a court order or an attorney KDOC will never just provide that information to Plaintiff upon request.

Plaintiff is at a sever disadvantage in that he is not law literate and lacks the proper documentation to support his factual allegations. As with any complaint documention would be necessary to prove the facts of the case. Plaintiff can only assume that providing said documentation is what this honorable court expect at this time being that simply stating the facts are insufficient to lay the ground work. But being in possession of documentation pertaining to other inmates not court related, would lead to a whole other set of issues for Plaintiff. And a large portion of Plaintiff's complaint centers around the disposition of several other inmates situations. Wherefore, Plaintiff request that this honorable court moves KDOC to provide him with the necessary documentation, all centered arround the February 4, 2020 incident that occurred at HCF, the inmates allege to have been involved and the disposition of their seg situation, in order to substantiate his claims.

### iii Count III

This argument is moreso about the cruel and unusual punishment with the retaliation secondary as the cruel and unusual punishment resulted from the retaliation.

Plaintiff stated facts that could be no clearer. In fear of his safety and not wanting to harm another to protect himself, Plaintiff refused to move in the cell with a known gang member with a history of violence. Unit team Abel made it blatantly clear that he could care less about his safety concerns. He further made it clear that Plaintiff would move with whoever he chose or he would punish Plaintiff by taking all of his property. Unit team Abel instructed shake down to remove all of Plaintiffs property from his cell. Leaving Plaintiff with absolutely no way to wash his face, brush his teeth or wash his hands after defecating. This went on for two (2) weeks. Plaintiff being deprived of his property for refusing to live with a violent inmate created the plausible cruel and unusual punishment by way of retaliation claim. Plaintiff has no idea how to further expound on this claim as the documentation was submitted with the initial complaint. Plaintiff has developed sever issues with his skin and lips as a result of being forced to just merely rinse his hands after using the rest room.

Plaintiff is unaware how much different his situation was from spending 24 hours a day with feces covering the cells surface's. One could avoid certain areas of the cell with

obvious coverage. However, there's no escaping any residual feces on ones hands due to failing to adequately wash them. without any property Plaintiff was unable to adequately keep up personal hygiene. not to mention the fact that Plaintiff was unable to contact his family or have access to the courts. one would think that basic necessities would definitely include soap, toothpast and toothbrush if it entailed living in a cell 24 hours a day. The health ramifications of one not adequately washing their hands are obvious. The courts have ruled that it's inhumane to leave an inmate in a cell 24 hours a day without running water for a period of time. But what good is running water when water alone is insufficient to clean ones hands or mouth.

would one eat at a resturant where they knew the cook frequently used the restroom and never washed their hands. That's exactly what Plaintiff was forced to do.

unit team Abel clearly cared less what the ramifications of his actions were. To say that unit team Abel disregarded an excessive risk to Plaintiffs health or safety and acted with a culpable state of mind due to his actions would be an understatement. common sense should tell anyone that depriving someone of an adequate ability to wash their hands or brush their teeth could obviously lead to health risk. unit team Manager Henke was made aware of the situation in real time and done nothing to rectify it. warden williams and soc Zmuda have done absolutely nothing to put an end to the practice.

Defendant Larry Johnson is the UTM and member of the seg review board. Defendant Johnson readily makes threats to cut off Plaintiffs phone and tablet and relieve him of all of his property but has absolutely no interest in releasing Plaintiff from seg. Despite advising Plaintiff that he would advocate for his seg release once Plaintiff accepted a cell mate prior to becoming unit team manager defendant Johnson has done the exact opposite.

Defendant Malty Martin is a unit team manager and one time member of Plaintiff's seg review board. Despite having no disciplinary issues defendant Malty Martin still refused to give Plaintiff a meaningful review and move for his release from seg.

Plaintiff has been in seg for over five (5) years and has endured several hardships due to his indefinite segregation including, but not limited to, the resolution of his marriage. The financial and mental burden along with the prolonged lack of physical contact took a heavy toll on Plaintiffs wife. The mental and physical stress in conjunction with the situation with his lips as a result of being two (2) weeks without soap or toothpast has taken a toll on Plaintiff.

A) (2) supporting facts cont.

on Feb 5, 2020 Plaintiff was removed from his cell in HCF general population and placed in segregation in EDCF for an incident that occurred two (2) days prior in HCF chow hall. According to reports an exchange between staff and inmates resulted in five correctional officers receiving medical attention. The incident was completely random and Plaintiff was not present nor was he involved.

A report was written by UTM J. Bell of HCF (Please see report #80538 attached) that falsely and ambiguously included Plaintiff's involvement. Plaintiff's right to due process was violated based on the fact that Plaintiff was never 1.) Provided with a full and fair opprotunity to challenge his seg placement. 2.) challenge the false accusations that placed him in seg. 3.) Never received a meaningful review that would allow his release from seg. 4.) on several occasions was flat out denied the right to even attend seg review.

on 2·5·20 Plaintiff began the initial process to contest his placement in seg. It was ignored by UTM Patterson. Denied by CMII M. Bos. Rubber stamped by then warden Sam Cline. All with the blessings of SOC Jeff Zmuda.

c) (2) supporting facts cont.

on Oct 9, 2023 Plaintiff was placed in a suicide/observation cell and all his property taken as a form of retaliation by UT Abel for refusing to live with a known gang member with a history of violence. without justification or cause and totally against policy and procedure, Plaintiff was forced to live without any legal materials, writing materials or even basic hygiene essentials. In clear violation of his constitutional right to be free of cruel and unusual punishment. For two (2) weeks Plaintiff was forced to live without the ability to adequately wash his hands, face or brush his teeth. This resulted in Plaintiff having issues with his skin and lips which persist until this day. Plaintiff's tablet was cut off and he had no phone in his cell. These actions were approved by UTM Henke and rubber stamped both warden Tommy Williams and Soc Jeff Zmuda.

Formal/Informal relief cont.

on Feb.5, 2020 after being placed in seg for an incident which he absolutely had no involvement, Plaintiff submitted a form 9 to begin the process of protesting his wrongful placement in seg. Receiving no response in the time allotted for staff to respond, Plaintiff proceeded with the grievance procedure. on march 6, 2020 Plaintiff received a response from CMII M. Bos denying said grievance. Plaintiff, unstisfied with that response, appealed to the warden for his review. Sometime after March 13, 2020 Plaintiff received a response from then warden Sam Cline agreeing with CMII M. Bos. Plaintiff then appealed that decision to

SOC Jeff Zmuda who agreed with both CMII Bos and Warden Cline. Plaintiff then sought relief with the Butler county District court, case # 2021-CV-000006.

Plaintiff was initially denied the right to attend seg. review upon arriving at both EDCF and LCF-in 2001. But once allowed to attend, no longer attended after several months of being denied release for no justifiable or penological reason. The reason stated for each seg. review's denial for release could've literally been photo copied for all intent and purposes, Making the reviews Meaningless. ( Please see attached documents)

4.) Defendant Jeff Zmuda is a citizen of Topeka, Ks, and is employed as secretary of corrections. At the time the claim(s) alleged in this complaint arose, was this defendant acting under the color of state law? Yes ☒ NO ☐. If your answer is "Yes", briefly explain: As the SOC Defendant Zmuda is responible for ensuring that the inmates in these facilities that he oversee are treated fairly and that their constitutional rights are protected. Defendant totally failed to do so in this instance.

5.) Defendant J. Bell is a citizen of Hutchinson, Ks, and is employed as a unit team xxxssxxxxxxxx Manager. At the time the claim(s) alleged in this complaint arose, was this defendant acting under the color of state law? Yes ☒ NO ☐. If your answer is "Yes", briefly explain: Acting with deliberate indifference and an obvious disregard for Plaintiff's constitutional rights, Defendant Bell recklessly authored a false narrative that he knew would lead to Plaintiff being placed indefinitely in seg.

6.) Defendant Maria G Bos is a citizen of ElDorado, Ks, and is employed as a classification Manager III. At the time the claim(s) alleged in this complaint arose, was this defendant acting under the color of state law? Yes ☒ NO ☐. If your answer is "Yes", briefly explain: Defendant Bos, being aware of the fact that Plaintiff was no STG member, continue to support Plaintiffs indefinite placement in seg and remained silent when it was alleged that Plaintiff was a STG leader.

7.) Defendant Cody W. Austin is a citizen of ElDorado, Ks, and is employed as a CS II. At the time the claim(s) alleged in this complaint arose, was this defendant acting under the color of state law? Yes ☒ NO ☐. If your answer is "Yes", briefly explain: Defendant Austin is a member of the seg. review board. As a member of the seg review board Defendant Austin has a duty to make seg review's Meaningful. He totally failed to do so in Plaintiff's situation.

8.) Defendant Kirbie R. Shearburn is a citizen of ElDorado, Ks. and is employed as a classification Manager II. At the time the claim(s) alleged in this complaint arose, was this defendant acting under the color of state law? Yes ☒ NO ☐. If your answer is "Yes", briefly explain: Defendant Shearburn is a member of the seg review board. Defendant Shearburn has remained obstinate in her refusal to release Plaintiff from his indefinite Seg designation. Therefor, rendering Seg review Meaningless.

9) Defendant John Mark. A Henke is a citizen of ElDorado, Ks, and is employed as a unit team manager. At the time the claim(s) alleged in this complaint arose, was this defendant acting under the color of state law? Yes ☒ No ☐. If your answer is "Yes", briefly explain: As the direct supervisor of UTS Abel, defendant could have immediately intervened, as he was made aware of the situation in real time, to prevent the violation of Plaintiff's constitutionally protected right to be free from cruel and unusual punishment.

10) Defendant Gregory Abel is a citizen of ElDorado, Ks, as is employed as a unit team supervisor. At the time the claim(s) alleged in this complaint arose, was the defendant acting under the color of state law? Yes ☒ No ☐. If your answer is "Yes", briefly explain: Due to defendant Abel's reckless and indifferent behavior Plaintiff was unable to wash his hands after using the restroom or prior to eating and was also unable to brush his teeth for two (2) weeks. Also, because defendant Abel instructed that all of Plaintiff's property be removed from his possession, Plaintiff was denied access to the courts and was unable to contact his family.

11) Defendant Malty Martin is a citizen of ElDorado, Ks, and is employed as a unit team Manager. At the time the claim(s) alleged in this complaint arose, was the defendant acting under the color of state law? Yes ☒ No ☐. If your answer is "Yes", briefly explain: Defendant Martin was a member of the Seg review board. In this role defendant was complicit in violating Plaintiff's constitutionally protected right by allowing him to languish in seg for over five (5) years without a meaningful review.

12) Defendant Matthew M. Moore is a citizen of ElDorado, Ks, and was employed as a classification Manager II. At the time the claim(s) alleged in this complaint arose, was the defendant acting under the color of state law? Yes ☒ No ☐. If your answer is "Yes", briefly explain: Defendant Moore was a member of the PMC board. As a member of the PMC board defendant reported directly to the warden and could have rectified Plaintiff's indefinite seg placement. Instead, he remained obstinate in his position of keeping Plaintiff in seg.

13) Defendant Dale R. Call is a citizen of ElDorado, Ks, and was employed as a classification Manager. At the time the claim(s) alleged in this complaint arose, was the defendant acting under the color of state law? Yes ☒ No ☐. If your answer is "Yes", briefly explain: Defendant was a member of the PMC board. As a member of the PMC board defendant was complicit in indefinitely confining Plaintiff in seg.

14) Defendant Phillip A. Patterson is a citizen of ElDorado, Ks, and is employed as TSC il. At the time the claim(s) alleged in this complaint arose,

was defendant acting under the color of state law? Yes ☒ NO ☐. If your answer is "Yes", briefly explain: Defendant was a one time UTM and Member of the seg review board. Defendant had the opprotunity rectify Plaintiffs wrongful placement in seg but chose not to.

15) Defendant Reed is a citizen of ElDorado, Ks, and was employed as a Behavior Health Provider. At the time the claim(s) alleged in this complaint arose, was this defendant acting under the color of state law? Yes ☒ NO ☐. If your answer is "Yes", briefly explain: Defendant Reed was a Member of the seg review board. As a Behavioral Health Provider defendant Reed see first hand the Mental effects of long term seg. Defendant Reed had a ethical duty to speak out against Plaintiff's indefinite seg placement but failed to do so.

16) Defendant Bunyard is a citizen of ElDorado, Ks, and was employed as a Behavior Health Provider. At the time the claim(s) alleged in this complaint arose, was this defendant acting under the color of state law? Yes ☒ NO ☐. If your answer is "Yes", briefly explain: Defendant Bunyard was a Member of the seg review board. Defendant Bunyard had an ethical duty to speak out against Plaintiff's indefinite seg placement but failed to do so.

17) Defendant Linda Wildermuth is a citizen of Lansing, Ks, and is employed as a unit team Manager. At the time the claim(s) alleged in this complaint arose, was this defendant acting under the color of state law? Yes ☒ NO ☐. If your answer is "Yes", briefly explain: Defendant Wildermuth was a member the seg review board and was informed by an inmate directly involved in the Feb 4, 2020 incident that Plaintiff had no involvement but defendant still refused to release Plaintiff.

18) Defendant Larry G. Johnson is a citizen of ElDorado, Ks, and is employed as a unit team Manager. At the time the claim(s) alleged in this complaint arose, was this defendant acting under the color of state law? Yes ☒ NO ☐. If your answer is "Yes", briefly explain: Defendant Johnson is a member of the seg review board. Defendant Johnson has no interest in releasing Plaintiff from seg.

19) Defendant John W. Martin is a citizen of ElDorado, Ks, and is employed as a Behavior Health Provider. At the time the claim(s) alleged in this complaint arose, was this defendant acting under the color of state law? Yes ☒ NO ☐. If your answer is "Yes", briefly explain: Defendant Martin is a Member of the seg review board. Defendant Martin has an ethical duty to speak out against Plaintiffs indefinite seg placement but has failed to do so.

Plaintiff humbly request that this honorable court allows him to later amend his defendant list due to not having all of the relevant information for defendants unlisted. Thank You

wherefore, Plaintiff prays that this honorable court grants this motion and provide any and all relief it deems just, fair or equitable. Furthermore, Plaintiff humbly request that the court gives an order allowing Plaintiff, through counsel of course, to depose the defendants which Plaintiff believes will no doubt satisfy summary judgement.

Respectfully Submitted,

Mr. John F. Francis
Prose

Certificate of Service

I, the above signed, do hereby certify that a copy of the foregoing motion was submitted to EDCF staff to be electronically filed on this 24 day of July, 2025 properly addressed to:
united states District court of Kansas
Thomas Williams, etc al.,