**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

**JOHN F. FRANCIS,**

**Plaintiff,**

**v.** **CASE NO. 25-3024-JWL**

**SAM CLINE, ET AL.,**

**Defendants.**

**MEMORANDUM AND ORDER**

This matter is a pro se civil rights action brought under 42 U.S.C. § 1983 by Plaintiff and state prisoner John F. Francis, who is currently incarcerated at El Dorado Correctional Facility ("EDCF") in El Dorado, Kansas. It comes before the Court on Plaintiff's second amended complaint (Doc. 20). For the reasons explained below, the Court will dismiss Counts I and II of this matter for failure to state a plausible claim for relief. The Court therefore will dismiss all Defendants whom Plaintiff has not sufficiently alleged personally participated in the constitutional violation alleged in Count III, the only remaining count in this action. The Court finds that Plaintiff's claim in Count III cannot be processed without additional information, which the Court will direct the appropriate officials to provide.

**I. Nature of the Matter before the Court**

Most of the complex procedural history of this case is detailed in the Court's memorandum and order issued June 25, 2025 and will not be repeated here. (*See* Doc. 14, p. 1-4.) For now, it is sufficient to say that because Plaintiff is a prisoner and proceeds in forma pauperis, the Court was required to screen his complaint and to dismiss it or any portion of it that is frivolous, fails to state a claim on which relief may be granted, or seeks relief from a defendant immune from such relief.

*See* 28 U.S.C. § 1915A(a) and (b); 28 U.S.C. § 1915(e)(2)(B). After screening the complaint, the Court issued a memorandum and order on May 9, 2025 ("the May M&O") that identified deficiencies in the complaint that left it subject to dismissal in its entirety and granted time to file an amended complaint. (Doc. 10.) To the extent necessary, the contents of the May M&O will be addressed further in the analysis section below.

Plaintiff filed his amended complaint on July 25, 2025. (Doc. 15.) The Court conducted the required screening of the amended complaint and, on August 18, 2025, it issued a memorandum and order ("the August M&O") identifying deficiencies in the amended complaint that left it subject to dismissal in its entirety. (Doc. 18.) The August M&O also granted Plaintiff time in which to file a second amended complaint that cured the deficiencies. *Id.* Plaintiff timely filed his second amended complaint (Doc. 20), which is now before the Court for the statutorily required screening.

In the second amended complaint, Plaintiff names as Defendants EDCF Warden Tommy Williams; former EDCF Warden Sam Cline; Kansas Secretary of Corrections Jeff Zmuda; J. Bell, a Unit Team Manager at Hutchinson Correctional Facility ("HCF"), where Plaintiff previously was incarcerated; Classification Manager III Maria G. Bos; CS II Cody W. Austin; Classification Manager II Kirbie R. Shearburn; Unit Team Manager John Mark A. Henke; Unit Team Supervisor Gregory Abel; Unit Team Manager Malty Martin; Classification Manager II Matthew M. Moore; Classification Manager Dale R. Call; TSC II Phillip A. Patterson; Behavioral Health Advisor (fnu)[1] Reed; Behavioral Health Provider (fnu) Bunyard; Unit Team Manager Linda Wildermuth; Unit Team Manager Larry G. Johnson; and Behavioral Health Provider (fnu) Martin. (Doc. 20, p. 1-2, 14-17.)

As the background to this case, Plaintiff alleges in the second amended complaint that on

[1] The term "(fnu)" is used to indicate that a defendant's first name is unknown at this time.

February 3, 2020, when he was incarcerated at HCF, there was a "completely random" incident involving inmates and staff that left five correctional officers requiring medical attention. (Doc. 20, p. 2, 6.) Plaintiff was not present for the incident and denies any involvement. *Id.* at 2, 6. He asserts that Defendant Bell wrote a report that falsely stated Plaintiff was involved. *Id.* at 6.

On February 5, 2020, as a result of the incident, Plaintiff was removed from HCF general population and transferred to EDCF, where he was placed in segregation. *Id.* at 6. Plaintiff asserts that he has been given various conditions to meet before he will be considered for release from segregation, including accepting a cellmate. *Id.* He has complied with this requirement and has gone long periods of time without any disciplinary infractions, yet he remains in segregation, which has adversely affected his mental and physical health. *Id.* at 2, 6.

Plaintiff asserts three counts in the second amended complaint, which will be summarized here and addressed in more detail as necessary in the analysis section below. In Count I, Plaintiff asserts the violation of his constitutional right to due process. *Id.* at 3. Specifically, he argues that his due process rights were violated by (1) the failure to provide him with a full and fair opportunity to challenge his initial placement in segregation and to challenge the false accusations on which the placement was based; (2) the failure to provide him with meaningful review of his placement that would allow him to be released from segregation; and (3) the denial—on "several occasions"—of his right to attend segregation review, also called "seg review." *Id.* at 6.As supporting facts for Count I, Plaintiff states that he has been in segregation for more than 5 years without any penological justification, and he identifies the Defendants involved in the denial of his attempts to contest his placement in segregation. *Id.* at 3, 6.

In Count II of the second amended complaint, Plaintiff asserts the violation of his constitutional right to equal protection. *Id.* at 3. As supporting facts for Count II, Plaintiff alleges

that he has been told he will not be released until he accepts a cellmate and attends a program he has already completed. *Id.* Plaintiff further alleges that other inmates who were directly involved in the February 2020 incident at HCF, as well as those who were not involved, have been released from segregation, some without completing the program Plaintiff is required to complete. *Id.* at 3, 7. Plaintiff identifies the Defendants involved in segregation review and release of other inmates from segregation and alleges facts to show their personal participation in the asserted violation of his constitutional rights. *Id.* at 7-11.

In Count III of the second amended complaint, Plaintiff asserts the violation of his Eighth Amendment right to be free from cruel and unusual punishment. *Id.* at 4. As supporting facts for Count III, Plaintiff explains that he refused to live in a cell with a known gang member who had a history of violence toward staff and inmates. *Id.* at 11. He asserts that on October 9, 2023, Defendant Abel retaliated against or punished him for that refusal by placing him in a "suicide/observation cell" and taking all of his personal property. *Id.* at 4, 11. Plaintiff states that during his two weeks in the suicide/observation cell, he was denied legal materials, writing materials, and basic hygiene essentials. *Id.* at 11-12. He was unable to adequately wash his hands after using the toilet, wash his face, or brush his teeth, which resulted in ongoing "issues with his skin and lips." *Id.* Liberally construed, Plaintiff appears to allege in the second amended complaint that he was denied soap, toothpaste, and a toothbrush. *Id.* at 12.

As relief in this matter, Plaintiff seeks an order directing his release from segregation; $250.00 per day from each Defendant for each day Plaintiff has been in segregation; and $250,000.00 in punitive damages. *Id.* at 5. Plaintiff seeks to sue each Defendant in his or her official and individual capacities. *Id.* The second amended complaint also contains a request that the Court allow Plaintiff to later amend his complaint to name additional Defendants and a request

for an order authorizing Plaintiff to depose Defendants. *Id.* at 17.

## III. Analysis

### A. Standards of Review

Because Plaintiff is a prisoner, the Court is required by statute to screen his second amended complaint and to dismiss the complaint or any portion thereof that is frivolous, fails to state a claim on which relief may be granted, or seeks relief from a defendant immune from such relief. 28 U.S.C. § 1915A(a) and (b); 28 U.S.C. § 1915(e)(2)(B).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988) (citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992). The Court liberally construes a pro se complaint and applies "less stringent standards than [it applies to] formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In addition, the Court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006). On the other hand, the Court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997).

"[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Furthermore, a pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). The Court must determine whether Plaintiff has "nudge[d] his claims across the line from conceivable to plausible." *See Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir.

2009)(quotation marks and citation omitted). "Plausible" in this context refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not met his or her burden. *Robbins v. Okla.*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, at 550 U.S. at 570).

**B. Count I**

Plaintiff's claims in Count I regarding the alleged violation of his right to due process have remained consistent since his initial complaint. In the May M&O, the Court explained:

> In Count I, Plaintiff asserts the violation of his constitutional due process rights because he was not given an opportunity to challenge his placement in segregation or the allegations that led to that placement, he has never received a meaningful review that could lead to his release from segregation, and he has been denied the opportunity to attend segregation review. (Doc. 1, p. 9.)
>
> "Procedural due process imposes constraints on governmental decisions that deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Matthews v. Eldridge*, 424 U.S. 319, 332 (1976). "To assess whether an individual was denied procedural due process, courts must engage in a two-step inquiry: (1) did the individual possess a protected interest such that the due process protections were applicable; and, if so, then (2) was the individual afforded an appropriate level of process." *Merrifield v. Bd. of Cty. Comm'rs*, 654 F.3d 1073, 1078 (10th Cir. 2011) (citation omitted).
>
> As the United States Supreme Court has explained, "[t]he types of interests that constitute 'liberty' and 'property' for Fourteenth Amendment purposes are not unlimited; the interest must rise to more than 'an abstract need or desire,' and must be based on more than 'a unilateral hope.'" *Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454, 460 (1989). The Supreme Court also has held that an inmate does not possess a liberty interest in assignment to a particular place of confinement. *See Wilkinson v. Austin*, 545 U.S. 209, 221-22 (2005); *Meachum v. Fano*, 427 U.S. 215, 224-25 (1976). Rather, the classification of prisoners is among the "wide spectrum of discretionary actions that traditionally have been the business of prison administrators rather than of the federal courts." *Meachum*, 427 U.S. at 225.
>
> Similarly, the Tenth Circuit has explained that "[t]he Due Process Clause guarantees due process only when a person is to be deprived of life, liberty, or property. Changing an inmate's prison classification ordinarily does not deprive him of liberty, because he is not entitled to a particular degree of liberty in prison."

> *Templeman v. Gunter*, 16 F.3d 367, 369 (10th Cir. 1994) (citing *Meachum v. Fano*, 427 U.S. 215, 225 (1976)). Being housed in administrative segregation implicates constitutional due process only if the confinement is "the type of atypical, significant deprivation in which a state might conceivably create a liberty interest." *See Sandin v. Conner*, 515 U.S. 472, 486 (1995). The complaint in this matter does not allege facts that demonstrate this sort of atypical, significant deprivation with respect to Plaintiff's experience in segregation at EDCF. Simply being placed in segregation without the chance to challenge the placement or the basis thereof is not, by itself, a federal constitutional violation. Moreover, Plaintiff has not identified the individual who actually ordered his placement in segregation, described that person's unconstitutional acts, or sufficiently described such extreme conditions or restrictions to show that his placement in segregation led to atypical and significant deprivations warranting due process protections.
>
> Thus, Count I is subject to dismissal for failure to state a claim on which relief can be granted. Plaintiff will be granted time in which to file an amended complaint that cures the deficiencies in Count I.

(Doc. 10, p. 9-11.)

Although the second amended complaint now before the Court contains factual allegations and argument that were not in the initial complaint, the nature of Count I remains the same. The Court has examined each asserted basis for Plaintiff's due process claims.

**i. Lack of Opportunity to Challenge Initial Placement**

First, Plaintiff asserts a due process violation based on the failure to allow him the opportunity to challenge his initial placement in segregation and Defendant Bell's allegations about Plaintiff's involvement in the incident at HCF. (Doc. 20, p. 6.) This claim is barred by the applicable two-year statute of limitations, since Defendant Bell's report and Plaintiff's placement in segregation occurred more than 5 years ago. *See Brown v. Unified Sch. Dist. 501*, 465 F.3d 1184, 1188 (10th Cir. 2006) (two-year limitations period under the law of Kansas, the forum state, governs civil rights claims under Section 1983); *see also Fogle v. Pierson*, 435 F.3d 1252, 1258 (10th Cir. 2006) (complaint may be dismissed *sua sponte* under Section 1915 based on a statute-of-limitations defense patently clear from the face of the complaint).

In addition, as explained in the May M&O, Plaintiff is not entitled to placement in a specific housing area of EDCF. He does not have a liberty interest in remaining out of segregation[2], therefore the Due Process Clause is not implicated. Accordingly, Plaintiff has failed to state a plausible claim that his constitutional due process rights were violated when he was not given the opportunity to challenge his initial placement in segregation or the factual basis for the placement.

**ii. Lack of Meaningful Review of the Placement**

Plaintiff also asserts in Count I of the second amended complaint that his due process rights have been violated because he has never received a meaningful review that could lead to his release from segregation. (Doc. 20, p. 6.) As explained in the May M&O and repeated above, being housed in administrative segregation implicates constitutional due process only if the confinement is "the type of atypical, significant deprivation in which a state might conceivably create a liberty interest." *See Sandin v. Conner*, 515 U.S. 472, 486 (1995). The Tenth Circuit has further explained:

> Prison conditions that "'impose atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life' may create a liberty interest protected by the Due Process Clause." *Fogle v. Pierson*, 435 F.3d 1252, 1259 (10th Cir. 2006) (alteration adopted) (quoting *Sandin v. Conner*, 515 U.S. 472, 484, 115 S. Ct. 2293, 132 L.Ed.2d 418 (1995)).
>
> To determine whether there is a protected liberty interest, courts generally consider factors such as "whether (1) the segregation relates to and furthers a legitimate penological interest, such as safety or rehabilitation; (2) the conditions of placement are extreme; (3) the placement increases the duration of confinement . . . ; and (4) the placement is indeterminate." *Estate of DiMarco v. Wyo. Dep't of Corrections*, 473 F.3d 1334, 1342 (10th Cir. 2007).

*Shields v. Cline*, 829 Fed. App'x 321, 323-24 (10th Cir. Oct. 2, 2020) (unpublished); *see also Grissom v. Roberts*, 902 F.3d 1162, 1169 (10th Cir. 2018) (applying these four factors after noting

---

[2] To the extent that Count I of the second amended complaint can be liberally construed to assert that placement in the suicide/observation cell is the type of atypical, significant hardship that implicates constitutional due process concerns, the Court is unpersuaded. Plaintiff's placement for two weeks in the suicide/observation cell in 2023 does not retroactively create a protected liberty interest that would require the State to provide him the opportunity to challenge the 2020 decision to place him in segregation or the factual basis for that decision.

that "the parties agree" that applying the factors is the proper way "to determine whether Grissom's solitary confinement violated a liberty interest under the Fourteenth Amendment").

When Plaintiff's allegations in the second amended complaint are liberally construed and his well-pleaded facts are taken as true, as is required during this initial screening of the second amended complaint, he has not shown that the balance of these factors weighs in his favor. First, Plaintiff asserts the total lack of a legitimate penological interest supporting his continued segregation placement. He asserts that several Defendants, who are part of the segregation review process, know that he was not involved in the HCF incident and he is not a gang member. He also has submitted reports generated after segregation review in February, March, and April 2021 that reflect that the reason Plaintiff remained in segregation at that time was "placement facts." (Doc. 20-1, p. 9-11.) Taking this information as true, the first factor weighs in Plaintiff's favor.

As to the second factor, however, Plaintiff has not shown that the conditions in segregation are extreme. He asserts that (1) he has been unable to touch or hug his family for over 5 years; (2) he has not been allowed outside recreation for nearly a year due to staff shortages; and (3) he has experienced mental and physical problems, including "issues with his blood pressure and mental health both requiring new medication," "back issues" from sleeping on a 2-inch mattress placed on concrete, "mental turbulence, and "skin issues." (Doc. 20, p. 6-7.) But even though "administrative segregation imposes an inherent hardship, the fact of isolating confinement is not in and of itself enough to create a liberty interest." *Shields*, 829 Fed. App'x at 324 (citing *Davis v. Ayala*, 576 U.S. 257, 287 (2015) (Kennedy, J., concurring), and *Sandin*, 515 U.S. at 486). Moreover, Plaintiff's other complaints, such as his back issues due to sleeping on a thin mattress placed on concrete, his anxiety and stress over having a cellmate, and lack of outdoor recreation due to staffing shortages "are not atypical to the ordinary incidents of prison life." *See Shields*, 829

Fed. App'x at 324 (citing *Sandin*, 515 U.S. at 486).

Plaintiff has not alleged that his placement in segregation increased the overall length of his confinement, so the third factor does not weigh in his favor. With respect to the fourth factor, Plaintiff argues that the reviews are meaningless. He (1) points out the periods of time he was in segregation and had no disciplinary infractions but was not released; (2) highlights his efforts to comply with requirements identified to him as conditions of his release from segregation, such as accepting a cellmate; (3) asserts that other inmates involved in the HCF incident have been released, even ones who have not completed a program Plaintiff must complete; (4) alleges that several Defendants involved in segregation review know he was not a part of the HCF incident; (5) points out Defendants' decisions to vote against his release and to not advocate for Plaintiff during segregation reviews; (6) and deems his indefinite stay in segregation "pre-ordained" based on a statement by an unnamed EAI officer when Plaintiff arrived at EDCF.[3] (Doc. 20, p. 2, 6-11.)

But Plaintiff also states that "once [he was] allowed to attend [segregation review,] Plaintiff no longer attended after several months of being denied release for no justifiable or penological reason." *Id.* at 13. The Court recognizes that the reports generated after segregation review and submitted by Plaintiff indicate that "placement facts" played a role in the decisions not to release Plaintiff from segregation. (*See* Doc. 20-1, p. 9-11.) But the most recent report submitted by Plaintiff is from August 2021. *Id.* at 13. And the reports also reflect disciplinary actions during Plaintiff's first year in segregation at EDCF, *see id.* at 11, and Plaintiff's lack of personal knowledge regarding the events of segregation reviews that he declined to attend undermines his assertion that the review is meaningless. Thus, the Court finds that the fourth factor does not weigh

---

[3] Plaintiff asserts that when he first arrived at EDCF and asked why he was being placed in segregation, an EAI officer told him "'Because of what occurred in HCF chow hall . . . And from what I understand you're going to be there for at least a couple of years.'" (Doc. 20, p. 10.)

in Plaintiff's favor.

The Court has liberally construed the second amended complaint and taken all well-pleaded facts alleged therein as true. Even doing so, the Court concludes that Plaintiff has not shown that his placement in segregation imposes atypical and significant hardship on him in relation to the ordinary incidents of prison life. Thus, Plaintiff has not shown that he has a liberty interest that implicates the Due Process Clause based on a lack of meaningful review.

**iii. Denial of the Ability to Attend Segregation Review**

Finally, Plaintiff's assertions regarding being prohibited from attending segregation review do not support a plausible claim for relief. Plaintiff generally asserts that "on several occasions [he] was flat out denied the right to attend seg review." (Doc. 20, p. 6.) The most specific information in the second amended complaint about Plaintiff being prevented from attending segregation review is a statement that he "initially was denied the right to attend seg. review upon arriving at both EDCF and LCF – in 2001." *Id.* at 13. Any claims based on a Defendant preventing Plaintiff from attending segregation review in 2001 or during the first 3 years he was at EDCF, however, are subject to dismissal as time-barred under the applicable two-year statute of limitations. *See Brown*, 465 F.3d at 1188; *see also Fogle*, 435 F.3d at 1258. Plaintiff has not alleged that he has been prevented from attending segregation review within the 2 years prior to his filing of the complaint in this matter, so this argument fails. For all of these reasons, Count I of the second amended complaint fails to state a plausible claim for relief and will be dismissed.

**C. Count II**

Count II of the second amended complaint is an equal protection claim, as it was in the initial complaint. (Doc. 20, p. 3.) With respect to this claim, the May M&O explained:

> The Equal Protection Clause of the Fourteenth Amendment "'commands that no state shall "deny to any person within its jurisdiction the equal protection of

> the laws," which is essentially a direction that all persons similarly situated should be treated alike.'" *See Requena v. Roberts*, 893 F.3d 1195, 1210 (10th Cir. 2018) (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). "An equal protection claim may challenge legislation or the conduct of an individual." *Ashaheed v. Currington*, 7 F.4th 1236, 1250 (10th Cir. 2021) (citation omitted). The claim "may be asserted with respect to a group or a 'class of one.' " *Id.* (citation omitted). "The former is more common and concerns a 'governmental classification[ ] that affect[s] some groups of citizens differently than others.'" *Id.* (citations omitted). Plaintiff does not allege that he was treated differently on the basis of class membership. To proceed upon an equal protection claim as a "class-of-one plaintiff," there must be allegations that others similarly situated in every material respect were intentionally treated differently and that the government's action was irrational and abusive. *Haik v. Salt Lake City Corp.*, 567 F. App'x 621, 631-32 (10th Cir. 2014); *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1216 (10th Cir. 2011).
>
> Although Plaintiff asserts that other inmates who were housed in segregation based on their involvement in the HCF incident have been released back to general population, he has failed to allege that the other inmates were similarly situated in every material respect. *See Barney v. Pulsipher*, 143 F.3d 1299, 1312 (10th Cir. 1998) ("In order to assert a viable equal protection claim, plaintiffs must first make a threshold showing that they were treated differently from others who were similarly situated to them.") (citation omitted). For example, Plaintiff does not contend that the other inmates' involvement in the incident was the same as his alleged involvement. In fact, he states that some of the other inmates to whom he compares himself were "directly involved" in the HCF incident. (Doc. 1, p. 9.) Accordingly, they are not similarly situated to Plaintiff, who maintains that he was not involved at all.
>
> Plaintiff has failed in the complaint to sufficiently allege that other inmates similarly situated in every material respect were intentionally treated differently than he has been. Plaintiff also does not identify a specific individual Defendant or Defendants responsible for the alleged equal protection violation. Thus, Count II is subject to dismissal for failure to state a claim. If Plaintiff chooses to pursue this claim in an amended complaint, he must allege sufficient facts that, if taken as true, could state a plausible claim for relief. He is reminded that "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *See Hall*, 935 F.2d at 1110.

(Doc. 10, p. 12-13.)

In the second amended complaint, Plaintiff supports his equal protection claim by alleging that he has been told he will not be released until he attends a program he has already completed, while other inmates who were directly involved in the February 2020 incident at HCF, as well as

those who were not directly involved, have been released from segregation, some without completing the program Plaintiff is required to complete. (Doc. 20, p. 3, 7.) But it is too simplistic to separate individuals placed into segregation for their involvement in the HCF incident into those who were "directly involved" in the HCF incident and those who were "not directly involved."

Each individual inmate has his own disciplinary and behavioral history that, among other things, factor into classification decisions. The attachments to the second amended complaint reflect that Plaintiff was placed into segregation "due to STG leadership involvement" that resulted in a "large disturbance" at HCF.[4] (Doc. 20-1, p. 11.) Thus, to show that he is being treated differently than another individual who is similarly situated in all material respects, Plaintiff must allege facts showing the release from segregation of another inmate who was sent to segregation because of STG leadership and involvement in the the HCF incident, who has a disciplinary history similar to Plaintiff's, and who has behaved similarly while in segregation.[5] Even liberally construing the second amended complaint and taking all well-pleaded facts as true, Plaintiff has not done so. Count II will be dismissed for failure to state a claim on which relief can be granted.

**D. Count III**

Highly summarized, Count III of the second amended complaint is Plaintiff's Eighth Amendment claim against Defendant Abel for placing him in the suicide/observation cell without access to adequate hygiene essentials for 2 weeks. (Doc. 20, p. 3, 11-12.) Plaintiff also asserts that he made Defendant Henke aware of the situation at the time, but Defendant Henke did nothing to rectify the situation. *Id.* at 12. He further alleges that "Warden Williams and Jeff Zmuda have done

---

[4] The Court recognizes that Plaintiff denies involvement in STG leadership, but it appears that the *belief* that Plaintiff is involved in STG leadership factored into his initial placement in segregation.

[5] This is a high bar, as it must be in an equal protection claim brought by a "class of one" that involves government decisions that require the exercise of discretion. "It is always possible for persons aggrieved by government action to allege, and almost always possible to produce evidence, that they were treated differently from others. . . . If even innocuous inconsistencies gave rise to equal protection litigation, government action would be paralyzed." *Kan. Penn Gaming, LLC*, 656 F.3d at 1210.

absolutely nothing to put an end to the practice," but he does not provide additional supporting facts for Count III explaining how they were aware or specifically identifying the "practice" they have failed to stop *Id.*

Both the May M&O and the August M&O cautioned Plaintiff that "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." (Doc. 10, p. 4, 13; Doc. 18, p 7.) After reviewing the second amended complaint and attachments thereto, the Court concludes that Plaintiff's conclusory assertion about Defendants Williams and Zmuda is insufficiently specific and insufficiently supported by factual allegations. It fails to state a plausible claim for relief against them under the Eighth Amendment. Therefore, Defendants Williams and Zmuda will be dismissed from this matter.

The Court further concludes, however, that the proper processing of Plaintiff's claim against Defendants Abel and Henke cannot be achieved without additional information from the appropriate Kansas Department of Corrections (KDOC) officials. *See Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978); *see also Hall v. Bellmon*, 935 F.2d 1106 (10th Cir. 1991). Thus, the Court will order the appropriate KDOC officials to prepare and file a *Martinez* report regarding Plaintiff's claims in Count III against Defendants Abel and Henke.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendants Cline, Zmuda, Bell, Bos, Austin, Shearburn, Martin, Moore, Call, Patterson, Reed, Bunyard, Wildermuth, Williams, and Johnson are dismissed from this matter without prejudice because Plaintiff has failed to state a plausible claim against each of these Defendants on which relief can be granted.

**IT IS FURTHER ORDERED** that Counts I and II of this matter are dismissed without prejudice for failure to state a claim.

**IT IS FURTHER ORDERED** that:

(1) The Kansas Department of Corrections ("KDOC") shall submit the *Martinez* Report on or before **November 17, 2025.** Upon the filing of that Report, the Court will screen the remaining portion of Count III of Plaintiff's second amended complaint and will issue further orders. If any part of Count III the second amended complaint survives screening, the Court will enter a separate order serving Defendants and setting an answer deadline.

(2) KDOC officials are directed to undertake a review of the subject matter of Count III of the second amended complaint as it is brought against Defendants Gregory Abel and John Mark A. Henke:

a. To ascertain the facts and circumstances;

b. To consider whether any action can and should be taken by the institution to resolve the subject matter of the claim against Defendants Abel and Henke in Count III of the second amended complaint; and

c. To determine whether other like complaints, whether pending in this Court or elsewhere, are related to the claim against Defendants Abel and Henke in Count III of the second amended complaint in this matter and should be considered together.

(3) Upon completion of the review, a written report shall be compiled which shall be filed with the Court and served on Plaintiff. If the KDOC officials wish to file any exhibits or portions of the report under seal or without service on Plaintiff, they must file such portions separately from the public report and provisionally under seal, to be followed immediately by a Motion to Seal or Redact Document(s). The

KDOC officials are exempt from filing the Notice of Proposed Sealed Record under D. Kan. Rule 5.4.2(b).

(4) Statements of all witnesses shall be in affidavit form. Copies of pertinent rules, regulations, official documents, and, wherever appropriate, the reports of medical or psychiatric examinations shall be included in the written report. Any recordings related to Plaintiff's claims shall also be included.

(5) Authorization is granted to the KDOC officials to interview all witnesses having knowledge of the facts, including Plaintiff.

(6) No motion addressed to the second amended complaint shall be filed until the *Martinez* Report required herein has been prepared.

(7) Discovery by Plaintiff shall not commence until Plaintiff has received and reviewed any Court-ordered answer or response to the second amended complaint. This action is exempted from the requirements imposed under Fed. R. Civ. P. 26(a) and 26(f).

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter the KDOC as an interested party on the docket for the limited purpose of preparing the *Martinez* Report ordered herein. Upon the filing of that report, the KDOC may move for termination from this action. Copies of this order shall be transmitted to Plaintiff, counsel for the KDOC, and to the Attorney General for the State of Kansas.

**IT IS SO ORDERED.**

DATED: This 10th day of October, 2025, at Kansas City, Kansas.

S/ John W. Lungstrum
JOHN W. LUNGSTRUM
United States District Judge