IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JOHN F. FRANCIS,            )
                            )
           Plaintiff,       )
                            )
     v.                     )
                            )     Case No: 25-3024-JWL
                            )
SAM CLINE, et al.,          )
                            )
           Defendants.      )

### REPORT IN "MARTINEZ VS AARON" INVESTIGATION
### CIVIL RIGHTS COMPLAINT

COMES NOW, undersigned counsel for the Kansas Department of Corrections (KDOC), and in accordance with the Court's October 10, 2025 Memorandum and Order, submits the following *Martinez* report to assist the Court in further screening the merits of John Francis' (Plaintiff) claims. This report is based upon affidavit testimony and official internal facility documentation available at the time of preparation. KDOC reserves the right to seek leave to supplement this report in the unlikely event additional evidence is discovered or becomes available.

On February 10, 2025, Plaintiff filed a *pro se* civil rights action pursuant to 42 U.S.C. §1983 in the United States District Court for the District of Kansas. (Doc. 1). At all relevant times Plaintiff was a resident incarcerated in the custody of the Secretary of Corrections. On May 9, 2025, the Court entered a Memorandum and Order, granting Plaintiff the opportunity to cure the

deficiencies in his original complaint and file a complete and proper amended complaint. (Doc. 10). On July 25, 2025, Plaintiff filed a First Amended Complaint, to which the Court entered another Memorandum and Order, granting Plaintiff the opportunity to cure deficiencies and file a complete and proper amended complaint. (Doc. 15 and Doc. 18). On September 29, 2025, the Plaintiff filed his Second Amended Complaint. (Doc. 20). On October 10, 2025, the Court dismissed Counts I and II of the Second Amended Complaint. (Doc. 21). In that same Memorandum and Order, the court directed the KDOC to submit a *Martinez* report regarding Plaintiff's Count III against Defendants Gregory Abel (Abel) and John Henke (Henke). (Doc. 21). The Court ordered the report to help ascertain the facts and circumstances as relates to Count III of Plaintiff's Second Amended Complaint. (Id.).

## SUMMARY OF ALLEGATIONS IN PLAINTIFF'S COMPLAINT

In Count III of his Second Amended Complaint, Plaintiff alleges that he was subjected to cruel and unusual punishment for his refusal to accept a cell mate. (Doc. 20 at 4). Plaintiff named four (4) defendants in Count III, however, pursuant to the October 10, 2025 Memorandum and Order of this Court, the only two (2) remaining defendants are EDCF employees, Gregory Abel and John Henke. (Doc. 21 at 14). Plaintiff seeks money damages. (Doc. 20 at 5).

According to Count III of the Second Amended Complaint, Plaintiff alleges that for two (2) weeks in October of 2023, he was forced to live without any legal materials, writing supplies, and basic hygiene essentials. (Doc. 20 at 11). During those weeks, he asserts that he was also unable to adequately wash his hands and face, nor brush his teeth. (Id.). Further, as a result of rinsing his hands and face with only water during those two (2) weeks, Plaintiff claims that he has issues with his skin and lips, and that these issues persist as of the filing of his Second

Amended Complaint. (Doc. 20 at 12). Plaintiff also describes being entirely cut off from contact with his family and the outside world during that time, with no access to a tablet or phone. (Id.).

## INVESTIGATION

Plaintiff's incarceration within KDOC facilities began on October 9, 2006, and he has been housed in several facilities since that date. (Exhibit 1). On October 17, 2022, Plaintiff was transferred from the Lansing Correctional Facility (LCF) to EDCF, where he remains as of this investigation.

### *HOUSING*

On October 5, 2023, the Plaintiff was delivered a copy of a disciplinary conviction he received for possession of a cell phone and trafficking in contraband. (Exhibit 2). His sanctions included fifteen (15) days of disciplinary segregation, sixty (60) days of restriction from privileges, and $40.00 in fines.

On October 6, 2025, the Plaintiff was scheduled to move in with another resident in the B cell house, one of the restrictive housing units (RHU) at EDCF. (Exhibit 3 at ¶8). However, the Plaintiff refused to accept a cellmate. (Id.). With few exceptions, the cells in the RHU are double cells. In and around October of 2023, the resident population in B cellhouse was at capacity. (Id. at ¶9). There are a limited number of cells in the B cellhouse, designated for single occupancy and those are observation cells, also known as suicide cells, and limited contact cells. (Id. at ¶11 ¶13). Observation cells are intended for crisis level residents who need to be single celled. (Id. at ¶ 11). A limited contact cell is a single occupancy cell, but less restrictive than an observation cell because it has the capabilities for a resident to live and shower in cell with minimal staff contact. (Id. at ¶ 13).

When the facility or a cell house is at capacity, residents who refuse a cellmate, may need to be temporarily housed in an observation cell or limited contact cell, until space becomes available. (Exhibit 5 at ¶12). Without an available double cell for the Plaintiff, he was placed in an observation cell in B cell house on October 6, 2023 (Exhibit 3 at ¶10). On October 11, 2023, the Plaintiff was moved to a less restrictive limited contact cell, also in B cellhouse (Id. at ¶12). On October 18, 2025, the Plaintiff was moved into a standard double cell in the B cellhouse, without a cellmate, since he continued to refuse to accept one. (Id. at ¶15).

### PERSONAL PROPERTY and HYGIENE

On October 6, 2025, the Plaintiff was packed out of A cellhouse and transferred to B cellhouse. When a resident is moved between cells, his property is packed by facility staff and is moved along with the resident. (Id. at ¶6). However, during pack out, if the resident is out of compliance with property limits, the resident's property is inventoried and held by the property officer until the resident is able to come into compliance. (Id.; Exhibit 4).

When the Plaintiff was moved to the B cellhouse, it was determined during his pack out that his personal property was in excess of policy limits. (Exhibit 3 at ¶ 7). His property was then taken to the property room to be inventoried. (Id. at ¶7). After inventory, the Plaintiff was given the opportunity to have his excess property sent out, donated, or destroyed. (Id.). Plaintiff was brought into compliance on October 17, 2023 and his property was returned. (Id.).

When residents are moved between cells, it is not unusual for them to wait several days before their personal property is returned to them. (Exhibit 5 at ¶5). As such, the facility routinely provides basic hygiene items to residents who are transferred into the RHU. (Id. at ¶6). Such items include soap, toothbrush, and toothpaste. (Id.). The Plaintiff would have been provided with these items upon his transfer to the B cellhouse on October 6, 2023, had he made

the request. (Id. at ¶10). Even after initial transfer, if a resident is unable to afford the purchase of personal hygiene items, all he must do is put in a request to be provided with these basic indigent hygiene supplies. (Id. at ¶7; Exhibit 6; Exhibit 7).

While Plaintiff generally complained about being without his personal property, he did not allege, nor did he provide any documentation that he made requests for writing materials or hygiene items from his unit team, and those requests were denied. (Exhibit 8).

Plaintiff alleges long-term physical effects from his inability to have and use soap during the time from October 6, 2023 to October 18, 2023. (Doc. 20 at 11). Specifically, Plaintiff complains of a skin and lip condition which resulted from his temporary lack of access to soap. (Doc. 20 at 12). There is not a single medical record from the time in question, which documents Plaintiff's complaint that he was without soap or other hygiene products. (Exhibit 9; Exhibit 10 at ¶12). The Plaintiff's medical records do not indicate that he ever made a sick call related to being without soap, nor for a skin condition resulting from this period of time in which he alleges he was without soap or other hygiene products. (Id.).

The Plaintiff's medical records do reflect that he was aware of and knew how to make sick calls. (Exhibit 9 p. 562-573; Exhibit 10 at ¶16 ¶17 ¶18 ¶21). It was not until April of 2025 that the Plaintiff made any complaint about a lip condition, and even then, he makes no reference to it originating from lack of soap in October 2023. (Exhibit 9 p. 364-366, 564; Exhibit 10 at ¶21 ¶22 ¶25).

### ACCESS TO COMMUNICATION

Standard double cells in the RHU have phones. Again, because Plaintiff refused to take a cellmate, he had to temporarily be placed in the only single occupancy cells available, which do not have phones in them. (Exhibit 3 at ¶14). The Plaintiff did have access to a tablet between

the dates of October 6, 2023 and October 9, 2023.  (Exhibit 11).  He again had access to a tablet beginning on October 16, 2023.  (Exhibit 11).  The Plaintiff also participated in video visitation on October 7, 2023 and October 14, 2023. (Exhibit 12).  A resident in restrictive housing without a phone can request a legal call through his unit team and may also request use of a shared tablet for legal research.  (Exhibit 3 at ¶14).  The facility has no documentation that Plaintiff made a request for either, between October 6, 2023 and October 18, 2023.  (Exhibit 3 at ¶14).

## EXHAUSTION

On November 30, 2023, the Plaintiff filed his grievance at EDCF, alleging staff retaliation against him for his refusal to take a cellmate.  (Exhibit 8).  Plaintiff cites the removal of his personal property and his placement in an observation cell and/or a limited contact cell, as evidence of this retaliation.  (Exhibit 8).  His grievance was denied at the facility level and then ultimately denied by the Secretary of Corrections on January 23, 2024.  (Exhibit 13; Exhibit 14 at ¶11).

Plaintiff's grievance makes no mention of a skin or lip condition related to the alleged retaliation.  (Exhibit 8).  Further, while it is clear that Plaintiff is aware of and has utilized the grievance process at EDCF, Plaintiff did not file any subsequent grievance related to his purported skin condition, nor did he grieve any failure by the facility or medical team, to treat the alleged condition.  (Exhibit 14 at ¶12).

## CONCLUSION

Plaintiff claims that in October of 2023 he refused to take a cellmate and in retaliation for his refusal, EDCF staff deprived him of his personal property and placed him in single occupancy cells designated for crisis level residents. Contrary to his assertion, the documentation

available suggests that Plaintiff's refusal to take a cellmate left EDCF staff limited housing options for him, until he could be moved to a standard double cell without a cellmate.

Moving residents from one cell to another requires the packing up of a resident's property before it is moved along with him. In this instance, Plaintiff had excess property and was out of compliance. Plaintiff was therefore temporarily without his property, only until he could be brought into property compliance. This is consistent with KDOC policy and EDCF practice.

Additionally, Plaintiff asserts that the retaliatory denial of soap and other hygiene products, resulted in long lasting skin condition. However, notably, the Plaintiff did not request a sick call for a related lip or skin condition. Plaintiff also failed to mention his concerns about being without soap or other hygiene products to the medical and behavioral health providers who visited him between October 6, 2023 and October 18, 2023.

Further, and again contrary to his assertion, Plaintiff was able to use his tablet for approximately six (6) of his twelve (12) days, while temporarily placed in those single occupancy cells. He also had two video visits during that same time period.

Respectfully submitted,

*/s Elizabeth E. Fowler*
Elizabeth E. Fowler        #27839
Legal Counsel
Kansas Department of Corrections
714 SW Jackson Street, Suite 300
Topeka, Kansas 66603
Phone: 785.600.0698
Fax: 785.783.6950
E-mail: elizabeth.fowler@ks.gov

# **EXHIBIT LIST**

1. KASPER profile for John Francis

2. Disciplinary Report 23-09-043

3. Affidavit of Kirbie Shearburn

4. IMPP 12-120A Control of Resident Personal Property

5. Affidavit of John Henke

6. IMPP 12-127D Issuance of Resident Hygiene Items

7. EDCF General Order 12-102

8. Grievance CA23010

9. Medical Records of John Francis – October 17, 2022 to present

10. Affidavit of Jason Hallock

11. The GTL message log of John Francis – October 6, 2023 to October 18, 2023

12. The ICS visitation log of John Francis – October 6, 2023 to October 18, 2023

13. Secretary of Corrections denial of grievance CA23010

14. Affidavit of Darcie Holthaus

**CERTIFICATE OF MAILING**

      I hereby certify that on this 15th day of December, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system which will send a notice of the electronic filing. I further certify that I mailed the foregoing document and the notice of electronic filing by first -class to the following non-CM/ECF participant:

John Francis # 2000048709
El Dorado Correctional Facility
1737 US-54
P.O. Box 311
El Dorado, KS 67042

                                        */s/   Elizabeth E. Fowler*
                                        Elizabeth E. Fowler
                                        Attorney for Kansas Department of Corrections