UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JOHN F. FRANCIS,                          )
                                          )
        Plaintiff,                        )
                                          )       Case No. 5:25-cv-03024-JWL
v.                                        )
                                          )
TOMMY WILLIAMS, et al.,                   )
                                          )
        Defendants.                       )

**AFFIDAVIT OF JASON HALLOCK**

Pursuant to 28 U.S.C. § 1746, Jason Hallock states under oath as follows:

1.      I am over eighteen years of age, suffer from no impairment, and am otherwise legally competent to make this Affidavit.

2.      My name is Jason Hallock. The matters stated in this affidavit are based on my personal knowledge and review of the medical records of inmate John F. Francis, as maintained by Centurion of Kansas, LLC ("Centurion") as custodian on behalf of the Kansas Department of Corrections ("KDOC").

3.      I am employed by Centurion as the Health Services Administrator at El Dorado Correctional Facility ("EDCF").

4.      Centurion is the contracted provider of medical and dental services for KDOC and performs its services under the State of Kansas Contract ID 48210 ("Centurion Contract").

5.      I am familiar with the retention of medical records by Centurion and KDOC. The case file, records, and notes for patients, including Mr. Francis, contain opinions, acts, and events made at or near the time of entry by a person with knowledge and were made and kept during the regularly conducted business activity by Centurion and KDOC. These records were made in the ordinary course of the provision of health care services to inmates in custody. It was a regular

1

Exhibit 10

business activity of Centurion and KDOC to make and keep such records. I am relying on my personal recollection and the information contained in Mr. Francis's case file, records, and notes in accordance with standard medical health professional practice. I have given the opinions stated herein with a reasonable degree of certainty.

6. I am aware that Mr. Francis has made a complaint against EDCF staff regarding his access to certain hygiene items. Specifically, Mr. Francis complains that he was without access to hand soap, a toothbrush, and toothpaste in his cell for approximately two (2) weeks in October 2023. Further, I am aware that Mr. Francis's complains that this alleged deprivation of hygiene items led to persistent lip and skin issues which were ongoing as of September 2025.

7. I reviewed the entirety of Mr. Francis's Centurion records between January 1, 2023 through September 2025. The following is a summary of Mr. Francis's medical treatment during this time period.

8. On February 3, 2023, Mr. Francis had a medical appointment where he was approved for a colonoscopy.

9. On April 4, 2023, Mr. Francis had a medical appointment for his asthma, where Mr. Francis reported he was doing well and had no other concerns.

10. On June 6, 2023, Mr. Francis was seen for a chronic care visit. The records indicate Mr. Francis was doing well and there were no concerns noted by Mr. Francis.

11. On June 19, 2023, the records indicate Mr. Francis refused an annual health assessment.

12. In October 2023, the time period which Mr. Francis alleges he was denied hygiene supplies that led to his alleged medical conditions, there are no records of any sick calls made by Mr. Francis. While there were daily checkups on Mr. Francis during his time in a segregated cell,

2

Exhibit 10

as is the case for all segregated inmates, there is nothing in Mr. Francis's records that indicate he complained about a lack of hygiene supplies, or that he was having any issues with his lips, skin, or teeth. The records indicate there were no concerns with Mr. Francis during his time in a segregated cell.

13. On December 28, 2023, Mr. Francis had a chronic care appointment, where the only concern he raised was a mole on the right side of his head. There is no documentation indicating Mr. Francis complained about his lips, skin, or teeth during this visit.

14. Mr. Francis had several follow-up appointments regarding his mole between January 2024 and July 2024, but there are no records indicating Mr. Francis complained about his lips, skin, or teeth during these visits or during this time period.

15. On December 5, 2024, Mr. Francis had an abdominal x-ray that KDOC requested to check for foreign objects within Mr. Francis. There is no documentation indicating Mr. Francis complained about his lips, skin, or teeth during this visit.

16. On December 20, 2025, the records indicate Mr. Francis followed up with medical staff regarding when he would be seen for his annual checkup. There is no documentation indicating Mr. Francis complained about his lips, skin, or teeth during this follow-up.

17. On January 9, 2025, the records indicate Mr. Francis reached out to medical staff to ask when would be seen for an asthma checkup. There is no documentation indicating Mr. Francis complained about his lips, skin, or teeth during this follow-up.

18. On February 4, 2025, the records indicate Mr. Francis put in a request for an albuterol prescription for his asthma. There is no documentation indicating Mr. Francis complained about his lips, skin, or teeth in this request.

3

Exhibit 10

19.    On March 31, 2025, Mr. Francis had a nursing visit for his asthma, during which his inhaler prescription was renewed. There is no documentation indicating Mr. Francis complained about his lips, skin, or teeth during this visit.

20.    On April 1, 2025, Mr. Francis had a full chronic care visit, where Mr. Francis indicated he was well and denied any concerns other than his asthma. There is no documentation indicating Mr. Francis complained of, or had any issues with, his lips, skin, or teeth during this visit.

21.    On April 18, 2025, Mr. Francis put in a sick call due to chapped lips. This was the first time Mr. Francis made any complaints about chapped lips. The records indicate Mr. Francis told the nursing staff during this visit how he was told during his April 1, 2025 visit that he should get antibiotics for his lips. The nurse's assessment during this April 18, 2025 visit was that Mr. Francis had mildly swollen and chapped lips, but with no open areas or cracks in his lips.

22.    On May 2, 2025, Mr. Francis put in a sick call, alleging the antibiotic for his chapped lips was not working.

23.    On May 5, 2025, Mr. Francis had a medical visit for his hypertension. There is no documentation indicating Mr. Francis complained about his lips, skin, or teeth during this visit.

24.    On June 6, 2025, Mr. Francis had a follow-up appointment regarding his elevated blood pressure and hypertension. There is no documentation indicating Mr. Francis complained about his lips, skin, or teeth during this visit.

25.    On July 22, 2025, Mr. Francis put in a sick call request, indicating the chapped lip treatment he was receiving was not working, and that he wanted to see a medical provider about the issue.

26.     On July 14, 2025, Mr. Francis was seen by a medical provider for his chapped lips. The medical provider provided education and self-care treatments for his chapped lip; specifically, how Mr. Francis should increase his water intake and use the coco oil that Mr. Francis has in his cell. This is the last medical record in Mr. Francis's file through September 29, 2025, when Mr. Francis filed his Complaint.

Pursuant to 28 U.S.C. § 1746, the above statements are true and based upon my personal knowledge to which I am competent to testify at trial. I declare, certify, verify, and state under penalty of perjury under the laws of the United States that the foregoing is true and correct.

FURTHER AFFIANT SAYETH NOT

_____
Jason Hallock

Subscribed and sworn to before me this 12th day of December, 2025.

_____
Notary Public

NOTARY PUBLIC - State of Kansas
MATTHEW BEYER
My Appt Expires 3-1-2027

5